CLERK, U.S. DISTRICT COURT

FEB 28 2008

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

43

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| TOMMY J. CARRILLO, | No.  CV 07-2656-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

I.

## PROCEEDINGS

Plaintiff filed this action on April 23, 2007, seeking review of the Commissioner's denial of his application for Disability Insurance Benefits.  The parties filed Consents to proceed before the undersigned Magistrate Judge on May 21, 2007, and May 22, 2007.  Pursuant to the Court's Order, the parties filed a Joint Stipulation on January 24, 2008, that addresses their positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on February 13, 1951. [Administrative Record ("AR") at 48, 63.] He has an eighth grade education [AR at 61], and past relevant work experience as a shipping and receiving clerk and handyman.  [AR at 58, 90-93.]

On November 12, 2003, plaintiff filed his application for Disability Insurance Benefits, alleging that he has been unable to work since September 9, 2000, due to diabetes, depression, hepatitis C, and liver problems. [AR at 48, 51, 57-58, 63.] After his application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 27-28, 29-33, 34, 40-44, 46-47.] A hearing was held on January 11, 2006, at which time plaintiff appeared with counsel and testified on his own behalf.  [AR at 19-22, 282-98.] On April 10, 2006, the ALJ determined that plaintiff was not disabled. [AR at 11-17.] A request for review of the hearing decision was filed on April 20, 2006.  [AR at 9-10.]  When the Appeals Council denied plaintiff's request for review, the ALJ's decision became the final decision of the Commissioner. [AR at 4-8.]

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th

1 │ Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court

2 │ must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala,

3 │ 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

4 │

5 │ **IV.**

6 │ **THE EVALUATION OF DISABILITY**

7 │         Persons are "disabled" for purposes of receiving Social Security benefits if they are unable

8 │ to engage in any substantial gainful activity owing to a physical or mental impairment that is

9 │ expected to result in death or which has lasted or is expected to last for a continuous period of at

10 │ least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

11 │

12 │ **A.      THE FIVE-STEP EVALUATION PROCESS**

13 │         The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing

14 │ whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821,

15 │ 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must

16 │ determine whether the claimant is currently engaged in substantial gainful activity; if so, the

17 │ claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in

18 │ substantial gainful activity, the second step requires the Commissioner to determine whether the

19 │ claimant has a "severe" impairment or combination of impairments significantly limiting his ability

20 │ to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.

21 │ If the claimant has a "severe" impairment or combination of impairments, the third step requires

22 │ the Commissioner to determine whether the impairment or combination of impairments meets or

23 │ equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404,

24 │ Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.

25 │ If the claimant's impairment or combination of impairments does not meet or equal an impairment

26 │ in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

27 │ sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled

28 │ and the claim is denied.  Id.  The claimant has the burden of proving that he is unable to perform

1 | past relevant work. <u>Drouin</u>, 966 F.2d at 1257. If the claimant meets this burden, a <u>prima facie</u>
2 | case of disability is established. The Commissioner then bears the burden of establishing that
3 | the claimant is not disabled, because he can perform other substantial gainful work available in
4 | the national economy. The determination of this issue comprises the fifth and final step in the
5 | sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; <u>Lester</u>, 81 F.3d at 828 n.5; <u>Drouin</u>, 966
6 | F.2d at 1257.

## B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS

9 |      In this case, at step one, the ALJ found that plaintiff had "not engaged in substantial gainful
10 | activity at any time relevant to this decision."[1] [AR at 15.] At step two, the ALJ concluded that
11 | plaintiff has "the following severe combination of impairments: poorly controlled diabetes mellitus,
12 | hepatitis C virus infection with early liver disease, and alcohol and methamphetamine abuse and
13 | probable dependence in remission by history with history of depression." [Id.] At step three, the
14 | ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the
15 | Listing. [AR at 16.] The ALJ further found that through the date last insured, plaintiff had, and
16 | never lost for any significant period of time, the residual functional capacity ("RFC")[2] "to lift, carry,
17 | push, or pull more than fifty pounds occasionally, and twenty-five pounds frequently; stand or walk
18 | frequently with customary breaks; sit at least frequently with customary breaks; climb, balance,
19 | stoop, kneel, or crouch frequently." [AR at 16.] The ALJ noted that aside from alcohol and drug
20 | abuse, plaintiff "never lost the ability to perform basic mental work related activities or his past
21 | relevant work on a sustained full time basis for any significant period of time." [Id.] At step four,
22 | the ALJ concluded that plaintiff is capable of performing his past relevant work as a shipping and

---

26 |   [1]   The ALJ also determined that "[plaintiff] last met the insured status requirements of the Social Security Act on December 31, 2005." [AR at 15.]

28 |   [2]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations. <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

4

receiving clerk.[3] [AR at 17.] Accordingly, the ALJ found plaintiff not disabled, and did not proceed to step five in the process. [Id.]


## V.

### THE ALJ'S DECISION

Plaintiff contends that the ALJ: (1) failed to provide clear and convincing reasons to reject the opinion of plaintiff's treating physician; and (2) failed to provide clear and convincing reasons to reject plaintiff's subjective symptoms. Joint Stipulation ("Joint Stip.") at 3. As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.


**TREATING PHYSICIAN'S OPINION**

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). See 20 C.F.R. §§ 404.1502, 416.927; see also Lester, 81 F.3d at 830. As a general rule, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)). Although the treating physician's opinion is entitled to great deference, it is not necessarily conclusive as to the question of disability. Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989).

Where the treating physician's opinion is uncontradicted, it may be rejected only for "clear and convincing" reasons. Lester, 81 F.3d at 830. Where the treating physician's opinion is contradicted by another physician, the ALJ may only reject the opinion of the treating physician

---

[3]   The ALJ indicated that he agreed fully with "the State Agency vocational consultants that the claimant is able to return to his past relevant work as generally performed." [AR at 17, 98.]

1  if the ALJ provides specific and legitimate reasons for doing so that are based on substantial

2  evidence in the record. Lester, 81 F.3d at 830; see Ramirez v. Shalala, 8 F.3d 1449, 1453-54 (9th

3  Cir. 1993). An examining physician's opinion based on independent clinical findings that differ

4  from the findings of a treating physician may constitute substantial evidence. Orn v. Astrue, 495

5  F.3d 625, 632 (9th Cir. 2007) ("Independent clinical findings can be either (1) diagnoses that differ

6  from those offered by another physician and that are supported by substantial evidence, (citation

7  omitted) or (2) findings based on objective medical tests that the treating physician has not herself

8  considered." (citation omitted)).  However, even if an examining physician's opinion constitutes

9  substantial evidence, the treating physician's opinion is still entitled to deference.[4]  Id.; Social

10  Security Ruling[5] 96-2p (a finding that a treating physician's opinion is not entitled to controlling

11  weight does not mean that the opinion is rejected).  The ALJ must provide specific, legitimate

12  reasons for the rejection of a treating physician's opinion.  See 20 C.F.R. §§ 404.1527(d),

13  416.927(d) (requiring that Social Security Administration "always give good reasons in [the] notice

14  of determination or decision for the weight [given to the] treating source's opinion"); see also SSR

15  96-2p ("the notice of the determination or decision must contain specific reasons for the weight

16  given to the treating source's medical opinion, supported by the evidence in the case record, and

17  must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator

18  gave to the treating source's medical opinion and the reasons for that weight.").

19

20

----

21   [4]   "In many cases, a treating source's medical opinion will be entitled to the greatest weight and

22  should be adopted, even if it does not meet the test for controlling weight." Social Security Ruling
96-2p.  In determining what weight to accord the opinion of the treating physician, the ALJ is

23  instructed to consider the following factors: length of the treatment relationship and frequency of
examination; nature and extent of the treatment relationship; the degree to which the opinion is

24  supported by relevant medical evidence; consistency of the opinion with the record as a whole;
specialization; and any other factors that tend to support or contradict the opinion. 20 C.F.R. §§

25  404.1527(d)(2)-(6), 416.927(d)(2)-(6).

26   [5]   Social Security Rulings ("SSR") do not have the force of law.  Nevertheless, they

27  "constitute Social Security Administration interpretations of the statute it administers and of its
own regulations," and are given deference "unless they are plainly erroneous or inconsistent with

28  the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

1        Plaintiff argues that the ALJ failed to properly consider the treating physician's opinion.

2 Specifically, plaintiff asserts that the ALJ failed to provide clear and convincing reasons[6] for

3 rejecting the opinion of plaintiff's treating physician, Dr. Donna Thompson. Joint Stip. at 4-6. Dr.

4 Thompson completed a Residual Functional Capacity Questionnaire regarding plaintiff's ability to

5 work on January 10, 2006. [AR at 277-81.] She noted that plaintiff suffered from hepatitis C and

6 diabetes, and indicated that plaintiff had the following symptoms: chronic fatigue, muscle and joint

7 aches, difficulty concentrating, and weakness. [AR at 277.] Dr. Thompson also noted that both

8 depression and anxiety affected plaintiff's physical condition. [AR at 278.] Dr. Thompson opined

9 that plaintiff could sit for at least 6 hours and stand/walk for less than 2 hours in an 8-hour working

10 day (with normal breaks).[7]  [AR at 279.]  In the decision, the ALJ rejected Dr. Thompson's

11 assessment because it was "exaggerated," "completely unsupported by [Dr. Thompson's] own

12 clinical notes" and "thoroughly rebutted by the assessments of the State Agency physicians." [AR

13 at 16-17.] Plaintiff contends that the reasons cited by the ALJ are insufficient. As discussed

14 below, the Court agrees with plaintiff.

15        First, the ALJ's finding that the Residual Functional Capacity Questionnaire filled out by Dr.

16 Thompson was "a good example of the accommodative, unsupported, exaggerated form often

17 prepared in haste by physicians who try to do their patients a good turn" is not at all supported by

18 the record. [AR at 16.] The ALJ merely offered generalizations regarding the practices of the

19 physicians who fill out these types of forms for their patients, and made unsupported assertions

20 about the probative value of the Residual Functional Capacity Questionnaire prepared by Dr.

21 _____

22     [6]  As a preliminary matter, the Court notes that defendant argues in the Joint Stipulation
that when the opinion of a treating physician is contradicted, the opinion may be rejected if the ALJ

23 gives "specific, legitimate reasons" for doing so that are based on substantial evidence. [AR at
6-7.] Assuming that the "specific and legitimate" standard is appropriate in this case because the

24 assessment of plaintiff's treating physician is contradicted by another physician, the ALJ's reasons

25 in his decision are legally insufficient to satisfy even this lower standard. As such, the Court's
analysis herein will address the ALJ's failure to provide specific and legitimate reasons for

26 rejecting the assessment of plaintiff's treating physician.

27     [7]  Dr. Thompson also indicated that plaintiff was incapable of working an 8-hour working
day, 40-hours per week, and would be absent from work more than four days per month. [AR at

28 279-80.]

1    Thompson without showing evidence of any actual impropriety by this particular physician. See

2    Lester, 81 F.3d at 832 ("The Secretary may not assume that doctors routinely lie in order to help

3    their patients collect disability benefits.") (quoting Ratto v. Secretary, Dept. of Health and Human

4    Services, 839 F.Supp. 1415, 1426 (D. Or. 1993)); see also Nguyen v. Chater, 100 F.3d 1462,

5    1465 (9th Cir. 1996) (the source of report is a factor that justifies rejection only if there is evidence

6    of actual impropriety or no medical basis for opinion) (citing Saelee v. Chater, 94 F.3d 520, 523

7    (9th Cir. 1996), cert. denied, 519 U.S. 1113 (1997)).  The record contains no evidence that Dr.

8    Thompson embellished her assessment of plaintiff's limitations in order to assist him with his

9    benefits claim. See Reddick v. Chater, 157 F.3d 715, 725-26 (9th Cir. 1998) (holding that the ALJ

10   erred in assuming that the treating physician's opinion was less credible because his job was to

11   be supportive of the patient).  Moreover, the ALJ's statements that Dr. Thompson's conclusions

12   in the Residual Functional Capacity Questionnaire were exaggerated and not supported by her

13   progress notes was based on the ALJ's selective reliance on one of Dr. Thompson's progress

14   notes that indicated plaintiff had been "pretty asymptomatic" since 2001.  [AR at 251.]  This is

15   improper.  The ALJ cannot pick and choose from the evidence in order to support his conclusions.

16   See Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick

17   and choose from a medical opinion, using only those parts that are favorable to a finding of

18   nondisability") (citing Switzer v. Heckler, 742 F.2d 382, 385-86 (7th Cir. 1984)).  The fact that Dr.

19   Thompson remarked in a progress note dated November 11, 2005, that "[i]t sounds like [plaintiff]

20   has been pretty asymptomatic since [2001]" does not negate Dr. Thompson's concurrent findings

21   of "[a]bdominal pain with a history of upper GI bleed" and "uncontrolled diabetes mellitus," or her

22   findings of poorly controlled diabetes mellitus, hepatitis C, liver cirrhosis, elevated blood pressure,

23   left wrist pain and leg ache in other progress notes, or her previously-noted assessment of plaintiff's

24   limitations in the Residual Functional Capacity Questionnaire.  [AR at 202, 208, 250-55, 277-81.]

25   Read in context, it is clear that Dr. Thompson was referring only to an episode of ulcerative

26   esophagitis that occurred in 2001, and was in no way suggesting that plaintiff was completely

27   recovered or that plaintiff was no longer experiencing any symptoms.  [AR at 215-17, 251.]

28

1  Certainly, Dr. Thompson would not have prescribed Aciphex and Glipizide,[8] referred plaintiff "to GI

2  for consultation," and indicated that "[plaintiff] should avoid nonsteroidal anti-inflammatory

3  medicines" because of the "GI symptoms" in her November 11, 2005, progress note if she

4  determined that plaintiff had no symptoms whatsoever. [AR at 251.] The conclusory statements

5  made by the ALJ do not reach the level of specificity required in order to reject the opinion of a

6  treating physician.  As such, these statements by the ALJ do not support his rejection of Dr.

7  Thompson's assessment.  See  Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988)

8  (conclusory reason "does not achieve the level of specificity" required to justify an ALJ's rejection

9  of a treating source's medical opinion).

10  Next, that the Residual Functional Capacity Questionnaire is a check-the-box form can be

11  a specific and legitimate reason for rejecting a physician's opinion when that opinion lacks

12  objective and clinical support.  See Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (citing

13  Murray v. Heckler, 722 F.2d 499, 501 (9th Cir. 1983) (expressing preference for individualized

14  medical opinions over check-off reports)).  In this case, however, the form is not the totality of

15  information provided by Dr. Thompson. Dr. Thompson treated plaintiff for an extended period,

16  conducted thorough examinations of plaintiff, and prescribed medications as evidenced by Dr.

17  Thompson's progress notes contained in the medical record. [AR at 202, 208, 250-55.] See 20

18  C.F.R. §§ 404.1527(d)(2)(i), (ii), 416.927(d)(2)(i), (ii) (weight accorded to a treating physician's

19  opinion dependent on length of the treatment relationship, frequency of visits, and nature and

20  extent of treatment received).  Based on the length of the treatment and Dr. Thompson's

21  experience with plaintiff, Dr. Thompson had the broadest range of knowledge regarding plaintiff's

22  medical condition, which is supported by the record. See Smolen, 80 F.3d at 1279; see also 20

23  C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (Treating physicians "are likely to be the medical

24  professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical

25

26     [8]  Aciphex is indicated for treatment of erosive or ulcerative gastroesophageal reflux disease.
   Physician's Desk Reference, p. 1072-73 (62 ed. 2008).  Glipizide is an anti-diabetic drug used in
27  patients with type 2 diabetes. http://my.webmd.com/medical_information/drug_and_herb/default.htm
   (search "Find A Drug, By Name" and enter the name of the drug).
28

impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."); Lester, 81 F.3d at 833 ("The treating physician's continuing relationship with the claimant makes him especially qualified . . . to form an overall conclusion as to functional capacities and limitations, as well as prescribe or approve the overall course of treatment."). Given that plaintiff's medical records report a history of severe impairments, including hepatitis C and diabetes mellitus [AR at 143-57, 172-75, 194-99, 202, 208-11, 213-24, 228, 231-36, 239-46, 249-56], the ALJ's rejection of Dr. Thompson's assessment as lacking supporting evidence itself lacks substantiation.

Finally, the ALJ's conclusion that Dr. Thompson's assessment is "thoroughly rebutted" by the assessments of the State Agency physicians is insufficient to constitute a specific and legitimate reason for rejection. [AR at 17.] Generally, more weight is given to the opinions of treating physicians. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ may only give less weight to a treating physician's opinion that conflicts with that of another physician if the ALJ provides sufficient specific and legitimate reasons for discounting the opinion. See Lester, 81 F.3d at 830; see also Orn, 495 F.3d at 632-33. Here, the ALJ merely asserts that the assessments of the State Agency physicians "are better supported by the evidence of record" and thoroughly rebut the assessment of plaintiff's treating physician. [AR at 16-17.] These vague assertions by the ALJ constitute the same kind of non-specific boilerplate language rejected by the Ninth Circuit as insufficient in Embrey. See Embrey, 849 F.2d at 421-23 ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the [treating] doctors', are correct." (footnote omitted)); see also McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) (finding that the ALJ rejecting the treating physician's opinion on the grounds that it was contrary to clinical findings in the record, was "broad and vague, failing to specify why the ALJ felt the treating physician's opinion was flawed"). Although the ALJ indicates that Dr.

1  Thompson's assessment is "thoroughly rebutted" by the assessments of the State Agency

2  physicians, he does not provide any explanation for this conclusion and fails to specify exactly how

3  Dr. Thompson's assessment was flawed in comparison to the State Agency physicians'

4  assessments.

5      Accordingly, the ALJ erred by not giving any specific and legitimate reasons supported by

6  substantial evidence in the record for rejecting Dr. Thompson's assessment.  As such, remand is

7  warranted on this issue.[9]

8

9                                    **VI.**

10                    **REMAND FOR FURTHER PROCEEDINGS**

11     As a general rule, remand is warranted where additional administrative proceedings could

12  remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F.3d 1172, 1179 (9th

13  Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984).

14  In this case, remand is appropriate to properly consider the assessment of plaintiff's treating

15  physician.  The ALJ is instructed to take whatever further action is deemed appropriate and

16  consistent with this decision.

17     Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**;

18  (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant

19  for further proceedings consistent with this Memorandum Opinion.

20

21  DATED: February 26, 2008

                                    _____
22                                              PAUL L. ABRAMS
                                    UNITED STATES MAGISTRATE JUDGE
23

24     [9]  As the ALJ's consideration on remand of the treating physician's assessment may
25  impact the other issues raised by plaintiff in the Joint Stipulation (although plaintiff initially indicates
    in the Joint Stipulation that there are only two disputed issues, i.e., the rejection of plaintiff's
26  treating physician's opinion and plaintiff's subjective complaints, the arguments presented by both
    parties regarding plaintiff's subjective symptoms also address the ALJ's silent disregard of the lay
27  witness testimony), the Court will exercise its discretion not to address those issues in this Order.
    Rather, plaintiff's subjective symptoms and the lay witness testimony of plaintiff's friend, Louise Luna,
28  should be re-examined in light of the remand Order.